I would like to reserve four minutes for rebuttal. All right. You keep your own track here. I'll try to do that. All right. Mr. Gontra came to the United States over nine years ago, and within seven months he applied for asylum. And today this Court will hear our appeal. So the uncontroverted testimony in his case, which was found, there was no finding of lack of credibility, is that Mr. Gontra was a member of the Akali Dal Nan political party, and that he was involved in the All India Sikh Students' Federation of Workers. He is a Sikh from India, from the Punjab area. The record below was not very well elaborated. He did, however, submit a four-page declaration with his asylum application, and he did testify at his court hearing. The uncontroverted testimony was that in 1982 his father had been arrested for political activity. In 1984 his father was killed at a political rally. And Mr. Gontra himself was arrested five times, the first time in 1986 and the last time in 1995. There is no evidence in the record of exactly how long each of the, one of the custodies was for in 1990, but if we add up the time he spent in custody for the other arrests, he was in custody over 16 and a half months. During that period of time there were never any formal charges brought against him. He was tortured, he was hung upside down, he was beaten. Twice he was shocked by electric shock, and once in his mouth, and he was told, this is so that you will be quiet. There is both direct and circumstantial evidence that the reason why he was arrested, the reason he was persecuted, was on account of his political opinion. He was a minister, he was politically involved, he was involved in political rallies, he was engaged in trying to organize members of his community and putting up political posters. All of this is uncontroverted. The cousin was killed. Pardon me? And his cousin was also killed, correct? So I think that based on the evidence of the record and Ninth Circuit precedent, there really is, I don't think, any question that he was persecuted and that he was persecuted on account of political opinion. Given the severity of the treatment he received, I would say that the immigration judge's decision really gives very cursory consideration to the seriousness of what happened to Mr. Gotra. And the judge regarded the generalized existence of human rights violations in India, the prominence of torture and illegal custody to be... We know all these facts. Right. So you might want to just have a seat and we'll hear from the government. If you'd like, I will do that. May it please the Court. My name is Cindy Farrier and I'll be representing the Attorney General in this matter. As you mentioned, you are aware of all the facts recited by Petitioner's Counsel. However, even assuming that what she says is true and that the past persecution is in fact present, both the immigration judge and the board determined that assuming past persecution, there was substantial evidence or there was evidence of changed country conditions through the Department of State's country condition reports. And the immigration judge looked at those reports, noted that there was no rebuttal of the evidence submitted in those reports, and determined that in fact any presumption of past persecution had been rebutted. Based upon that particular finding, the immigration judge's decision as affirmed by the board is in fact supported by evidence, substantial evidence in the record with regard to the country conditions report. Was there an individualized analysis that was conducted? The immigration judge in her decision goes through and indicates the lines in the report which seem to apply to the petitioner's case. That is, that there was the healing of the rift between the Sikhs and the Hindus and that there should no longer be any fear of harm for Sikhs. Basically that the fear would be the same for all, both the Sikhs and the Hindus in the Punjab. Why is that an individualized analysis? I mean that's a fairly generic finding. Because the petitioner's claim is in fact that he would be persecuted on account of him being a Sikh and on account of his activities in preaching in support of the Sikhs' cause. So because his claim relies upon that fact, the immigration judge's citing to the particular findings or report statements would make sense as to the particular claims raised by the petitioner. He went through a lot there, torture, imprisonment, beatings. He was hung upside down, put electric wires in his mouth. Told him that this was going to cure him, I think, from preaching. And he was paying his dues as his father did. With regard to those factors as to supporting a claim for humanitarian asylum, that was something that was not raised specifically before the immigration judge. The board, however, did consider the claim based upon humanitarian factors and determined that that persecution was not severe to the level that they normally would grant a humanitarian asylum, make a grant of humanitarian asylum. In the past, claims such as rape or sexual assault have been a basis to perhaps support a grant of humanitarian asylum. The Seventh Circuit has noted the German Jews... ...approved for humanitarian asylum in this Matter of Chin case. In Matter of Chin, the petitioner there had suffered persecution from the age of eight on through leaving China. In fact, had periods of detention where also suffered quite severe forms of torture and also had to be hospitalized in intensive care for over a month and had permanent damage resulting from that. In this particular claim, the petitioner does cite the instances of detention and the severity perhaps, but at the same time, there isn't the evidence necessarily of the prolonged physical and mental effects that may have been present in the Matter of Chin. With regard to the grant of humanitarian asylum, that is something that is... Well, in Chin, did they hang him upside down and put electric wires in his mouth? In Chin, it is quite clear that there was severe forms of detention. I'm not exactly certain exactly what it was that caused the particular hearing loss, I believe that he suffered and his other permanent damage that resulted. But it is something that... It is a determination that is made in the board's discretion. So the review standard that the court applies for that is an abuse of discretion rather than substantial evidence. And here, it's something that the evidence supports the board's determination that the level was not to the degree which would support that particular claim. I think the difficulty with... One of the difficulties with what the IJ did was that the country report really presents a mixed picture. It's not as we see in some country reports where they say there are no acts of violence, that there's peace, in fact. It talks about the persistence of encounter killings, that the Sikh problem is still intractable at that stage, that there are still extrajudicial killings. But none of that is discussed. And the reason I mention that is because obviously the IJ is required to do an individualized analysis and absent an absolutely clear picture that no Sikh is going to suffer. He didn't say, well, here is... I realize there's a mixed picture here, but I think the country reports rebut the past presumption afforded by the past persecution because of X or Y. He just said, well, the country reports completely paint a picture of peace, which they do not. So that's my diatribe you can... Well, the immigration judge does seem to rely most heavily on the 1997 addendum to the country report, which is much more favorable or speaks much more in terms of there is no evidence that Sikhs or Sikh particulars face harassment, mistreatment, or persecution merely on the basis of their religion. So the language in that particular addendum is more, I guess I should say, I don't know how to say it one way, basically more that there is no harm that's left for the Sikhs. There is a reference that there may be... Sporadic and unexplained bombings. Then the last one had occurred prior to the addendum's report. The language, I think, in the addendum is what supports the immigration judge's conclusion and the fact that she believed that the country conditions had changed to the extent such that petitioner would no longer face or would no longer have a well-founded fear of persecution. Have you handled other cases involving Sikhs? Yes, I have. I must say I have no doubt, having read a number of these, that when a Sikh falls into the hands of the Indian police and is tortured, it's because of political views. You say we're not compelled to that, but anybody who's familiar with what the past has been is compelled to think. The fact that other people may be abused is an excuse for politically persecuting the Sikhs. I don't see how anybody familiar with it would think that. And I don't get the picture that the immigration judge gave him the credit of past persecution. The immigration judge made the finding that she did not believe that he had suffered past persecution on account. She turned to the country reports without giving him a proper status of having suffered past persecution, which had to be rebutted. Well, the immigration judge goes on immediately after she makes the statement of no finding of past persecution. She assumes that if it's there. Well, she does make the statement that even assuming that it is present, I find that the changed country conditions rebut the fear. So basically the position of the government is that regardless, that no Sikhs can recover, can prevail on their asylum claims. Well, with regard to this particular petitioner that did not present any rebuttal evidence of the fact that the free elections had occurred, of the fact that the conditions appear to be improving for Sikhs, that for this particular petitioner that the changed country conditions overcome the past persecution. If there's no further questions. OK, you're right on time. I want to say something. I just wanted to address what the persecution had been in matter of China, the question of the humanitarian grant of asylum in matter of Chen, the respondent was in custody for six months as a child, eight years old, and subsequently he was in reeducation camps and so forth. But I think the length of detention that my client was subject to is longer and very serious based on the fact that he was an adult when he was subjected to the torture and custody. Based on Ninth Circuit precedent and the case of law versus INS, I would say that it was an abuse of discretion for the judge and for the board to deny humanitarian asylum based on the precedent of matter of Chen. And furthermore, the government states that this respondent did not present rebuttal evidence as to 1996 and 97 State Department reports and whether or not there was evidence in his particular case. I would say that there was not any individualized analysis as to how the reports affected his particular case where he was already known and had already been singled out many times for persecution. And his attorney did try to obtain time to submit rebuttal evidence and that was denied to him, that opportunity was denied by the immigration judge. I think he asked for a continuance. Yes, he did ask for a continuance. All right, thank you. Thank you very much. Do you believe that the humanitarian... Pardon me? That the claim for humanitarian relief has been adequately exhausted before the Board of Immigration Appeals? I believe it was exhausted, Your Honor, yes. I think it could have been... Do you have a record citation to the... That it was... Yes, that it was raised before the Board. I can get it in just a second. Great, thank you. You're going to get that for us? Yes, you can submit it afterwards to the court. We have what's known as a gum sheet.
judges: Pregerson, Noonan, Thomas